UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PATRICK BURKE - ARTISAN, LLC,

    Plaintiff,

v.                                                    Case No. 12-C-0662

ANDREW WINCH DESIGNS LIMITED,

    Defendant.

**DECISION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS**

Patrick Burke - Artisan, LLC (Burke), a limited liability corporation incorporated under Wisconsin law with its principal place of business in Manitowoc, Wisconsin, filed the present action alleging various state and federal claims against Andrew Winch Designs Limited (AWD), a limited liability corporation with its principal place of business in London, United Kingdom.[1] The suit arises from a failed contract negotiation between the litigants for Burke to design and construct an elaborate four-story tall wooden wall relief sculpture called the "Tree of Life." The sculpture was to be installed in an unnamed client's (the Client) luxury yacht that was being constructed in the Netherlands. AWD filed a motion to dismiss Burke's complaint under Federal Rule of Civil Procedure 12(b)(2) on the ground that this Court does not have personal jurisdiction over AWD. AWD also moves to dismiss

---

[1] AWD, in a supporting declaration by Andrew Winch, indicates that none of the owners of AWD are residents of Wisconsin. (Winch Decl. ¶ 12, ECF No. 10.) The parties are diverse and given that the amount in controversy exceeds $75,000, this Court has subject-matter jurisdiction under 28 U.S.C. § 1332. In addition, Burke alleges copyright infringement, thus conferring jurisdiction under 28 U.S.C. §§ 1331 & 1338.

under 12(b)(6) Burke's claim for intentional misrepresentation because the complaint's averments of fraud fail to comply with Rule 9(b). For the following reasons, AWD's motion will be denied in part and granted in part.

**FACTS**

AWD is a company that provides interior design services to clients for luxury yachts and personal aircraft. Its contacts with Wisconsin are fairly minimal, though not inconsequential. In 2005, AWD contracted with the Client to provide interior design work on a yacht that was built in Manitowoc, Wisconsin. The yacht was built by Burger Boat Company. This project is referred to by AWD as Project 637. During the course of construction of Project 637, AWD contracted with Burke in March 2010 to provide a wooden carving of a narwhal tusk. Project 637 was completed sometime in 2010.

Shortly after contracting with Burke for this project, AWD, on its own initiative, contacted Burke in September 2010 to see if he was interested in a separate project for the Client, which is referred to as Project 807. (Compl. ¶ 16.) This project involved substantially greater complexity than the services provided by Burke for Project 637. This yacht was being constructed in Amsterdam, Netherlands. During the course of negotiations, it was apparent that AWD desired to have Burke design a forty-foot high wooden art wall relief sculpture. Burke was expected to assemble a team of sculptors, obtain a workshop space where the sculpture would be created, gather materials, construct the relief sculpture, have it transported to the Netherlands, and install the work on the yacht. (*Id.* ¶¶ 17, 20.)

During the course of extensive negotiations between Burke and AWD in regard to Project 807, the parties communicated through phone, email, and fax. (*Id.* ¶ 23.) The role of AWD in Project 807 was for all practical purposes to act as a design contractor for the Client. AWD recruited artists to fulfill the design needs indicated by the Client, sub-contracting with artists, such as Burke, to design and construct pieces for the yacht. At some point, AWD requested that Burke submit a series of drawing proposals for the art work, for which AWD paid Burke $20,000. (Compl. ¶ 19; Winch Decl. ¶ 32.) Additionally, Burke designed a wooden sample piece that he sent to AWD. After soliciting Burke for his design proposals and sample piece, AWD also on two separate occasions, requested Burke visit the Netherlands to inspect the boatyard and meet with the Client to further outline his vision for the art work. (Compl. ¶¶ 30-31.) Ultimately, Burke was successful in being selected as the Client's preferred artist for the Tree of Life project. (*Id.* ¶ 29.) However, in February 2012, contract negotiations broke down over the key terms of the price Burke demanded.

Burke filed suit on June 28, 2012. His complaint asserts a federal claim for copyright infringement and a confusing hodgepodge of state law claims, including declaratory and injunctive relief, strict responsibility, intentional misrepresentation, negligent misrepresentation, breach of contract, promissory estoppel, unjust enrichment, quantum merit (sic), punitive damages, implied duty of good faith, and implied promise of no hindrance. AWD filed its motion to dismiss on October 4, 2012, and briefing was complete on November 7, 2012.

## ANALYSIS

In Wisconsin, courts use a two-step analysis to determine whether personal jurisdiction over a defendant exists. First, the plaintiff must demonstrate personal jurisdiction over the defendant under

3

Wisconsin's long-arm statute, Wis. Stat. § 801.05. *Steel Warehouse of Wis., Inc. v. Leach*, 154 F.3d 712, 714 (7th Cir. 1998). The plaintiff is only required to make a prima facie showing of jurisdiction. *Logan Productions, Inc. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir. 1996). If this burden is satisfied, the court must consider whether exercising jurisdiction complies with the due process clause of the Constitution. *Id.* In determining whether jurisdiction exists over a non-resident defendant, the court can rely on the complaint and any affidavits that have been submitted. *O'Hare Int'l Bank v. Hampton*, 437 F.2d 1173, 1176 (7th Cir. 1971); *Schimpf v. Gerald, Inc.*, 2 F. Supp.2d 1150, 1160 (E.D. Wis. 1998). All inferences drawn from the record must be in the plaintiff's favor. *PKWare, Inc. v. Meade*, 79 F. Supp. 2d 1007, 1011 (E.D. Wis. 2000).

**1. Wisconsin Long-Arm Statute**

Burke alleges personal jurisdiction is appropriate in accord with Wis. Stat. §§ 801.05(1)(d), based on AWD's general presence in the State. Under Wis. Stat. § 801.05(1)(d), a Wisconsin state court will have personal jurisdiction "[i]n any action whether arising within or without this state, against a defendant who when the action is commenced . . . [i]s engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise." The defendant's contacts with the forum are evaluated "when the action is commenced" and the court is not to consider the defendant's prior activities within the state. *FL Hunts, LLC v. Wheeler*, 2010 WI App 10, ¶ 11, 780 N.W.2d 529, 533 (Wis. App. Ct. 2009) ("[I]t is error for the circuit court to analyze [defendant's] contacts preceding the commencement of the action"). A defendant has "substantial and not isolated" activities within Wisconsin when the defendant has "solicit[ed], creat[ed], nurture[d], or maintain[ed], whether through personal contacts or long-distance communications, a continuing business relationship with anyone in the state." *Dorf v. Ron March Co.*, 99 F. Supp. 2d 994, 997 (E.D.

4

Wis. 2000) (quoting *Stauffacher v. Bennett*, 969 F.2d 455, 457 (7th Cir. 1992), superseded on other grounds by rule, Fed. R. Civ. P. 4(k)(2)). In determining whether contacts with Wisconsin are "substantial," so as to allow for personal jurisdiction under the long-arm statute, courts consider the following five *Nagel* factors: (1) quantity of contacts, (2) nature and quality of contacts, (3) source of contacts and their connection with cause of action, (4) interests of State of Wisconsin, and (5) convenience of the parties. *PKWare, Inc. v. Meade*, 79 F. Supp. 2d at 1012; *Nagel v. Crain Cutter Co.*, 50 Wis. 2d 638, 648-50, 184 N.W.2d 876 (1971).

Personal jurisdiction cannot be established on the basis of § 801.05(1)(d) because at the time the instant action was commenced, June 28, 2012, AWD did not have a continuing business relationship with someone in the Wisconsin forum. Burke argues that AWD has a continuing business relationship with Burger Boat Company and with Burke. However, AWD's business relationship with Burger Boat Company ended in 2010 when Project 637 was completed. In addition, AWD's business relationship with Burke ended in February 2012 when their contract negotiations failed. AWD's long distance contacts with Burke between 2010 and early 2012 may arguably be characterized as continuous and systematic; however, Burke cannot point to any contacts by AWD with the forum at the time the action was commenced that can be characterized as continuous and systematic. Therefore, section 801.05(1)(d) does not apply to these factual circumstances.

Burke makes a number of unfocused arguments that personal jurisdiction also exists under the provisions of Wisconsin's long-arm statute that confer personal jurisdiction over out-of-state defendants in cases arising out of either acts or injuries that occur in the State. His strongest argument, and the one in which I find merit, is that the court has personal jurisdiction under Wis. Stat.

§ 801.05(5). Two of the subsections of that section are pertinent here. They confer jurisdiction over an out-of-state defendant in any action which:

> (a) Arises out of a promise, made anywhere to the plaintiff or to some 3rd party for the plaintiff's benefit, by the defendant to perform services within this state or to pay for services to be performed in this state by the plaintiff; or
>
> (b) Arises out of services actually performed for the plaintiff by the defendant within this state, or services actually performed for the defendant by the plaintiff within this state if such performance within this state was authorized or ratified by the defendant;
> . . . .

Wis. Stat. § 801.05(5)(a), (b).

The gist of Burke's claim against AWD is that AWD solicited Burke to assist AWD in creating a large wall carving for a yacht being built for AWD's Client. Compl. ¶ 16. Burke performed substantial services in Wisconsin at AWD's direction, including researching and identifying the appropriate quality and quantity of material for the project; obtaining wood samples; preparing drawings, sketches, and alternative designs; recruiting and developing logistics for the team of carvers and sculptors needed for the project; and arranging for travel to and from the Netherlands with Burke's prime carver. Patrick Burke asserts that virtually all of the work he performed on the project was performed in Wisconsin under AWD's supervision and direction, and subject to AWD's review and recommendation. (Decl. of Patrick Burke, ¶¶ 27-32.) Thus, it would appear that the case arises out of services performed in this state by the plaintiff for the defendant for which the defendant promised to pay or which the defendant authorized or ratified. Wis. Stat. § 801.05(5)(B).

AWD argues that for Wis. Stat. § 801.05(5)(a) to apply, it must be shown that there was a "bargaining relationship" between Burke and AWD. (Reply, ECF No. 14, at 8 (quoting *Federated Rural Elec. Ins. Corp. v. Inland Power & Light Co.*, 18 F.3d 389, 393 (7th Cir. 1994)). But Burke

6

Case 1:12-cv-00662-WCG   Filed 11/30/12   Page 6 of 10   Document 15

alleges there was a bargaining relationship between the parties. Burke alleges that AWD hired it to assist AWD in creating the wood sculpture for AWD's client. While AWD denies that any contract existed, that is not the question before the Court at this time. In deciding a motion to dismiss for lack of personal jurisdiction, the Court must "accept as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in the affidavits in favor of the plaintiff." *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012).

Even absent the existence of a contract, the allegations of the complaint are sufficient to establish personal jurisdiction under Section 801.05(5). Subsection (a) requires a promise, not a legally enforceable contract, and subsection (b) requires only that the performance of the services within this State be authorized or ratified by the defendant. Based on the facts alleged in the complaint and set forth in the declaration, and viewing them in the light most favorable to the plaintiff, either subsection (a) or (b) encompasses the kind of transaction Burke and AWD entered into.

Of course, the plaintiff must also establish that the parties contemplated that services would be performed in this State. *Federated Rural Elec. Ins. Corp.*, 18 F.3d at 393. But this requirement is clearly met here. "The long-arm statute requires only that some services were contemplated to be or actually were performed in Wisconsin." *Hartwig Assoc., Inc. v. Kanner*, 913 F.2d 1213, 1217 (7th Cir. 1990). AWD obviously knew that Burke was located in Wisconsin, having worked with Burke on the previous project and having contacted Burke at its offices in Wisconsin. And AWD made repeated requests of Burke which it communicated to Burke either by email or telephone at Burke's offices in Wisconsin. In light of these facts, the requirements of the Wisconsin long-arm statute are met, and we turn to the due process question.

**2. Due Process**

"[D]ue process requires only that in order to subject a defendant to a judgment *in personam*, [the defendant must] have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In order for there to be minimum contacts, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum[ ], thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts . . . ." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quotation marks omitted).

The facts of this case do not present a difficult question of whether the exercise of personal jurisdiction over AWD comports with due process. In determining whether AWD purposely availed itself of the Wisconsin forum for purposes of the Fourteenth Amendment, it is highly relevant to consider AWD's initial solicitation of Burke in regard to Project 807. *See Madison Consulting Group v. State of South Carolina*, 752 F.2d 1193, 1202 (7th Cir. 1985) ("The question of which party initiated or solicited a business transaction has long been considered pertinent to the constitutional propriety of personal jurisdiction in a suit arising out of the transaction."). The fact that AWD initiated the arrangement with Burke, carried on extensive discussions with Burke and made numerous requests of Burke, all in Wisconsin, make clear that AWD purposely availed itself of the benefits of the Wisconsin
8

forum.[2] Therefore, personal jurisdiction over AWD comports with the requirements of due process. *See id.* at 1203 ("By so actively reaching out to solicit the services of a Wisconsin [business] in connection with this contract, we conclude that defendants have purposefully established contacts with Wisconsin that easily satisfy the dictates of constitutional due process.").

**3. Intentional Misrepresentation Claim**

AWD also moves to dismiss Burke's claim for intentional misrepresentation on the basis that Burke's averments of fraud do not comply with Federal Rule of Civil Procedure 9(b). AWD points out that Burke's complaint has not alleged with particularity "the identity of the person making the misrepresentation, the time, place, and context of the misrepresentation, and the method by which the misrepresentation was communicated." *Radiator Exp. Warehouse, Inc. v. Shie*, 708 F. Supp. 2d 762, 770 (E.D. Wis. 2010) (quoting *Wade v. Hopper*, 993 F.2d 1246, 1250 (7th Cir. 1993)). Burke implicitly acknowledges the deficiency of its pleading regarding his intentional misrepresentation claim by submitting a declaration with attached emails between Burke and AWD in an effort to cure the deficiency.[3] Given that Burke's complaint fails to comply with the particularity requirement of Rule 9(b), AWD's motion to dismiss the intentional misrepresentation claim will be granted. However,

---

[2] Not only is AWD's initial solicitation of Burke significant, but AWD's direction to Burke to submit drawings and the work sample to AWD and to travel to the Netherlands twice, all in connection with the contemplated contract, illustrates that AWD actively reached out to solicit the business of Burke. *Madison*, 752 F.2d at 1193 (holding that personal jurisdiction was present where "[defendant] not only initiated the negotiations with [plaintiff] by a phone call from its counsel, but also induced [plaintiff's] partner to travel cross-country to discuss the potential contract, all completely at [defendant's] expense.").

[3] Even were I to consider Burke's declaration, it is apparent that the attached email exhibits are not sworn to be authentic copies. Therefore, Burke's declaration cannot be relied upon to cure the deficient pleading.

9

Burke will be granted leave to amend his complaint within thirty days outlining the particular factual circumstances supporting his intentional misrepresentation claim. Burke may wish to also reconsider the viability of some of the other claims in its complaint so as to avoid wasteful motion practice that only delays and increases the cost of resolving the dispute.

## CONCLUSION

Based on the foregoing reasons, AWD's motion to dismiss (ECF No. 8) the complaint pursuant to Rule 12(b)(2) on the basis that personal jurisdiction is lacking is **DENIED**. AWD's motion to dismiss Burke's intentional misrepresentation claim for failure to comply with Rule 9(b) is **GRANTED** without prejudice. Burke will have **thirty days to amend** his complaint. AWD's response is due twenty days thereafter. The Clerk may set the matter on the Court's calendar for scheduling at this time.

**SO ORDERED** this   30th   day of November, 2012.

      s/ William C. Griesbach
      William C. Griesbach, Chief Judge
      United States District Court